## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**Kimberly Gunn,**

    *Plaintiff,*

    v.

**I.C. System, Inc.,** *and*
**Charter Communications, Inc.,**

    *Defendants.*

Case Number: _____

**JURY TRIAL DEMANDED**

## COMPLAINT AND JURY TRIAL DEMAND

COMES NOW the Plaintiff, **Kimberly Gunn**, ("**Ms. Gunn**"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendants, **I.C. System, Inc.** ("**I.C. System**"), and **Charter Communications, Inc.** ("**Charter**"), (jointly, the "**Defendants**"), stating as follows:

## PRELIMINARY STATEMENT

1.    This is an action brought by Ms. Gunn against I.C. System for violations of the *Fair Debt Collection Practices Act*, 15 U.S.C. § 1692, *et seq.* ("**FDCPA**"), and against both Defendants for violations of the *Florida Consumer Collection Practices Act*, Section 559.55, Florida Statutes, *et seq.* ("**FCCPA**").

## JURISDICTION AND VENUE

2.    Subject matter jurisdiction arises under the FDCPA, 15 U.S.C. §1692k(d), the FCCPA, Section 559.77(1), Florida Statutes, and 28 U.S.C. § 1331.

3.    This Court has supplemental jurisdiction for Plaintiff's FCCPA claims pursuant to 28 U.S.C. § 1367.

4.    The Defendants are subject to the provisions of the FDCPA and/or the FCCPA, and to the jurisdiction of this Court pursuant to Fed. R. Civ. P. 4(k)(1)(A) and Section 48.193, Florida Statutes.

5.    Venue is proper in the Middle District of Florida, pursuant to 28 U.S.C. § 1391(b)(2), because the events giving rise to this cause of action occurred within this District.

## PARTIES

### Ms. Gunn

6.    **Ms. Gunn** is a natural person residing in the City of Lakeland, Polk County, Florida.

7.    Ms. Gunn was previously known as Kimberly Nance.

8.    Ms. Gunn is a *Consumer* as defined by the FDCPA and the FCCPA, 15 U.S.C. § 1692a(3), and Section 559.55(8), Florida Statutes, respectively.

### I.C. System

9.    I.C. System is a Minnesota corporation with a principal business address of **444 Highway 96 East, St. Paul, MN 55127**.

10.     I.C. System is registered to conduct business in the State of Florida, where its registered agent is **CT Corporation System, 1200 South Pine Island Road, Plantation, FL 33324.**

11.     I.C. System is a *Debt Collector* within the meaning of the FDCPA, 15 U.S.C. § 1692a(6), and the FCCPA, Section 559.55(7), Florida Statutes, in that it uses instrumentalities of commerce, including postal mail and the internet, interstate and within the State of Florida, for its business, the principal purpose of which is the collection of debts, and/or it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

12.     I.C. System is licensed as a *Consumer Collection Agency* ("**CCA**") by the Florida Office of Financial Regulation, holding license number **CCA0900391.**

13.     As a licensed CCA, I.C. System knows, or should know, the requirements of the FDCPA and the FCCPA.

### Charter

14.     **Charter** is a Delaware corporation with a principal business address of **400 Atlantic St., Stamford, CT 06901**.

15.     Charter is registered to conduct business in the State of Florida, where its registered agent is **Corporation Service Company, 1201 Hays St., Tallahassee, FL 32301.**

## FACTUAL ALLEGATIONS

### The Debt

16.     Prior to October 2017, Ms. Gunn allegedly incurred a debt (the "**Debt**") to Charter[1] for cable, internet, and telephone services.

17.     The alleged Debt arose from goods or services which were for family, personal, or household purposes, *specifically* cable, internet, and telephone services, and therefore meets the definitions of *Debt* under the FDCPA, 15 U.S.C. §1692a(5), and the FCCPA, Section 559.55(6), Florida Statutes.

### Debt Reported by Waypoint, Disputed by Ms. Gunn

18.     Around January 2018, Charter assigned, or otherwise transferred the Debt to Waypoint Resource Group ("**Waypoint**"), a Texas-based debt collector.

19.     In June 2018, Waypoint began reporting the Debt, monthly, to the major *Consumer Credit Reporting Agencies* ("**CRAs**"), including Equifax. **SEE PLAINTIFF'S EXHIBIT A.**

20.     On or around June 12, 2018, Ms. Gunn requested and obtained a copy of her consumer credit disclosure from Equifax.

21.     Ms. Gunn noticed the Waypoint tradeline reporting to her credit and disputed Waypoint's reporting of the account.

---

[1] At the time, the provider was known as BrightHouse Networks, which was later acquired by Charter.

22.     Equifax, upon receipt of Ms. Gunn's dispute, sent Waypoint an *Automated Consumer Dispute Verification* ("**ACDV**") request through an online platform known as e-OSCAR, which asks Waypoint to make a reasonable investigation into the dispute pursuant to the *Fair Credit Reporting Act* ("**FCRA**"), 15 U.S.C. § 1681, *et seq.*

23.     Waypoint thus knew that Ms. Gunn disputed the Debt, at least as early as June 2018.

24.     Shortly thereafter, Waypoint ceased its reporting of the Debt to the CRAs.

25.     A debt collector who becomes aware that a debt is disputed is required to include notice of dispute in all subsequent communications in connection with the collection of that debt. *See* 15 U.S.C. § 1692e(8).

26.     On information and belief, Waypoint thereafter returned the Debt to Charter, noting that Ms. Gunn disputed the account.

### Debt Reported by Amsher, Disputed by Ms. Gunn

27.     Around April 2020, Charter reassigned the Debt for collection, this time with Amsher Collection Services, Inc. ("**Amsher**").

28.     Amsher re-reported the Debt to the CRAs around June 2020 as a purported "non-disputed" debt.

29.     Ms. Gunn re-disputed the Debt in August 2020.

30.     Experian, upon receipt of Ms. Gunn's dispute, sent Amsher an ACDV, asking Amsher to make a reasonable investigation into the dispute, pursuant to the FCRA.

31.     In response to Ms. Gunn's dispute, pursuant to 15 U.S.C. § 1692e(8), Amsher updated its reporting of the Debt to indicate that Ms. Gunn disputed the Debt. **SEE PLAINTIFF'S EXHIBIT B.**

32.     Amsher thus knew that Ms. Gunn disputed the Debt, at least as early as August 2020.

33.     Shortly thereafter, Amsher ceased reporting the Debt to the CRAs, and, on information and belief, thereafter returned the Debt to Charter and informed Charter that Ms. Gunn disputed the Debt.

## Cobb Attempts to Collect Debt, Disputed by Ms. Gunn

34.     Sometime in October 2020, Ms. Gunn received a letter from Maury Cobb, Attorney at Law, LLC ("**Cobb**"), an Alabama-based debt collector, in an attempt to collect the Debt. **SEE PLAINTIFF'S EXHIBIT C.**

35.     Ms. Gunn disputed the Debt a third time, in writing, to Cobb.

36.     Cobb thus knew that Ms. Gunn disputed the Debt at least as early as October 2020.

37.     Shortly thereafter, Cobb discontinued collection efforts relating to the Debt.

38.     On information and belief, Cobb returned the Debt to Charter, notating that Ms. Gunn disputed the Debt.

### CBE Reports Debt, Disputed by Ms. Gunn

39.     In January 2021, Charter once again assigned the Debt for collection, this time to the CBE Group, Inc. ("**CBE**"), an Iowa-based debt collector.

40.     In February 2021, Ms. Gunn requested and obtained her Equifax consumer disclosure.

41.     Upon review of her disclosure from Equifax, Ms. Gunn noticed that CBE was reporting the same Debt as a purported non-disputed debt. **SEE PLAINTIFF'S EXHIBIT D.**

42.     On that same day, Ms. Gunn disputed the Debt to Equifax.

43.     Equifax, upon receipt of Ms. Gunn's dispute, sent CBE an ACDV, and asked CBE to make a reasonable investigation into the dispute, pursuant to the FCRA.

44.     At some point prior to January 2022, CBE ceased reporting the Debt to the CRAs.

45.     On information and belief, CBE returned the Debt to Charter and informed Charter of Ms. Gunn's dispute.

### Disputed, Deleted Debt Re-Reported by I.C. System

46.     In January 2022, Charter assigned the Debt to I.C. System.

47.     In February 2022, I.C. System reported the Debt to Experian as a purported "new" collection. **SEE PLAINTIFF'S EXHIBIT E.**

48.     I.C. System falsely reported the account was "opened" in January 2022, had been "First reported" in February 2022, and had a "Date of status" of January 2022. *Id.*

49.     I.C. System reported the same balance, account status, date of first delinquency, and ECOA code as the previous debt collectors had reported in 2018 and 2020. *Id.*

50.     I.C. System failed to indicate the Debt was disputed in its report to Experian. *Id.*

51.     The tradeline thus appeared on Ms. Gunn's credit report as a "new" and "non-disputed" debt.

52.     I.C. System was fully aware that the portfolio of debts it received from Charter for collection had been charged-off several years ago and had already been placed with multiple agencies previously.

53.     I.C. System is a large debt collection agency and is acutely aware that any portfolio of consumer debts already worked by other debt collectors inherently contains a large number of disputed debts.

54.     However, I.C. System employed no reasonable procedures designed to flag previously disputed debts – or even so much as *ask* Charter to identify previously disputed debts.

55.     On information and belief, Charter failed to inform I.C. System of Ms. Gunn's existing dispute, despite having been informed of it on at least four prior occasions over the past four years.

56.     Assuming *arguendo* that Charter failed to disclose to I.C. System that the Debt was disputed, reliance on an original creditor's erroneous records is not a defense to an FDCPA action. *See Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011) (holding that debt collectors remain liable even when violations are not knowing or intentional).

57.     I.C. System's failure to disclose that the Debt was disputed materially damaged Ms. Gunn's credit scores.

58.     The failure to properly report a disputed debt *as disputed* creates a concrete injury-in-fact because the failure to disclose this information affects credit scores, meaning Ms. Gunn suffered "a real risk of financial harm caused by an inaccurate credit rating." *Evans v. Portfolio Recovery Associates*, 889 F. 3d 337, 345 (7th Cir 2018).

59.     Further, I.C. System's reporting of the Debt with a different "Date opened" and different "Date of status" was engaged in with the intention of circumventing automated systems employed by CRAs like Experian designed to prevent the re-reporting of previously deleted information, as required by 15 U.S.C. § 1681i(a)(5)(B).

60.     Had I.C. System's reporting been substantially similar to the previous debt collectors', Experian's automated systems would have prevented the I.C. System tradeline from appearing on Ms. Gunn's report.

61.     As a result of I.C. System's re-reporting of previously deleted information as a purported "new" collection, Ms. Gunn's credit scores dropped significantly.

62.     Had I.C. System reported the account with a Metro 2 Compliance Condition Code of "XB" (meaning "consumer disputes this information"), Ms. Gunn's credit scores would have remained unchanged.

### I.C. System Reports False 'Date of Status'

63.     The "Date of status" of a collection account indicates the date an account was first designated to be "in collection." *Cf. Baker v. Capital One Bank*, No. CV 04–1192 PHX–NVW, 2006 WL 2523440, at *4–*5 (D.Ariz. Aug. 29, 2006).

64.     I.C. System's report indicating a "Date of status" of January 2022 falsely implies that the account was first referred for collection in January 2022, even though it had been placed for collection in January 2018, or earlier.

65.     The "Date of status" is a key point of data evaluated by many versions of FICO® credit scores, including FICO Model 2, used by Experian for mortgage evaluations. The more recent the "Date of status," the more adverse the information is factored against the consumer. *See Toliver v. Experian Info. Solutions, Inc.*, 973 F. Supp. 2d 707 (S.D. Tex. 2013).

66.     Further, "(a)reasonable jury could find that the 'Date of status' entry was "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Id*. (quoting *Sepulvado v. CSC Credit Services, Inc.*, 158 F.3d 890 (5th Cir. 1998)).

## I.C. System Reports False "Date Opened"

67.     I.C. System reported to Experian that the Charter account had a "Date opened" of January 2022. **SEE PLAINTIFF'S EXHIBIT E.**

68.     Again, I.C. System's reported information is demonstrably false, as Ms. Gunn opened the account with Charter in 2017.

69.     A reasonable and prudent reader of Ms. Gunn's credit report would infer that an account reflecting a "Date opened" of January 2022 means – as the plain language implies – the account was opened with Charter in January 2022. *Toliver*, 973 F. Supp. 2d 707, 721 ("Here, there is no language to indicate that 'Date opened' means anything other than the date that the consumer opened the account, as it does for the majority of accounts on (Plaintiff's) credit report…. (A) reasonable jury could find that the 'Date opened' entry was misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.") (Internal quotations omitted).

70.     To the extent that I.C. System may have been relying upon Metro 2 guidelines promulgated by the Consumer Data Industry Association when determining how to report the "Date opened," "Date of status" and date "First

reported," the failure to adhere to Metro 2 guidelines does not give rise to a violation of the FDCPA. *See Dash v. Midland Funding LLC*, Case No: 8:16-cv-2128-T-36AAS (M.D. Fla. Mar. 3, 2017) quoting *Mestayer v. Experian Info. Sols., Inc*, 15-CV-03645-EMC, 2016 WL 631980, at *4 (N.D. Cal. Feb. 17, 2016) ("[Plaintiff] has failed to point to any authority indicating that a failure to comply with an industry standard is a failure to comply with the law.")

71.     Experian and other CRAs included I.C. System's errant credit information in reports it sold to creditors, or potential creditors, of Ms. Gunn.

72.     As a result, Ms. Gunn has suffered damages including loss of credit and damage to her reputation.

73.     Ms. Gunn has hired the undersigned law firm to represent her in this matter and has assigned her right to fees and costs to such firm.

## COUNT I
## I.C. SYSTEM'S VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692e

74.     Ms. Gunn adopts and incorporates paragraphs 1 – 73 as if fully stated herein.

75.     I.C. System violated **15 U.S.C. § 1692e** when I.C. System made false and/or misleading representations in an attempt to collect the Debt, when it reported the Debt to Experian, claiming: (a) the "Date of status" of the Debt (*e.g.*, the date which the account became a collection) was January 2022, when it was January 2018 or earlier; (b) that the account had been "First reported" as of

February 2022, when it had been reported since June 2018 or earlier; (c) that the account was opened in January 2022, when it was opened in 2017; and, (d) that the Debt was not disputed, when it was disputed.

76. I.C. System's actions caused Ms. Gunn to suffer damages to her credit report and scores, as well as emotional distress in having to deal with an account which she thought had been deleted as a result of her multiple disputes.

77. I.C. System's actions render it liable for the above-stated violations of the FDCPA, and Ms. Gunn is therefore entitled to statutory damages up to $1,000.00 as well as other relief.

**COUNT II**
**I.C. SYSTEM'S VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692e(10)**

78. Ms. Gunn adopts and incorporates paragraphs 1 – 73 as if fully stated herein.

79. I.C. System violated **15 U.S.C. § 1692e(10)** when I.C. System made false and/or misleading representations in an attempt to collect the Debt, claiming: (a) the "Date of status" of the Debt (*e.g.*, the date which the account became a collection) was January 2022, when it was January 2018 or earlier; (b) that the account had been "First reported" as of February 2022, when it had been reported since June 2018 or earlier; (c) that the account was opened in January 2022, when it was opened in 2017; and, (d) that the Debt was not disputed, when it was disputed.

80.     I.C. System's actions caused Ms. Gunn to suffer damages to her credit report and scores, as well as emotional distress in having to deal with an account which she thought had been deleted as a result of her multiple disputes.

81.     I.C. System's actions render it liable for the above-stated violations of the FDCPA, and Ms. Gunn is therefore entitled to statutory damages up to $1,000.00 as well as other relief.

## COUNT III
## I.C. SYSTEM'S VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692e(8)

82.     Ms. Gunn adopts and incorporates paragraphs 1 – 73 as if fully stated herein.

83.     I.C. System violated **15 U.S.C. § 1692e(8)** when I.C. System communicated credit information known to be false, specifically, claiming: (a) the "Date of status" of the Debt (*e.g.*, the date which the account became a collection) was January 2022, when it was January 2018 or earlier; (b) that the account had been "First reported" as of February 2022, when it had been reported since June 2018 or earlier; (c) that the account was opened in January 2022, when it was opened in 2017; and, (d) that the Debt was not disputed, when it was disputed.

84.     I.C. System violated **15 U.S.C. § 1692e(8)** when I.C. System communicated credit information which was known to be disputed, or which should have been known to be disputed, without disclosure of dispute, in its reports to Experian in February 2022.

85.     I.C. System's actions caused Ms. Gunn to suffer damages to her credit report and scores, as well as emotional distress in having to deal with an account which she thought had been deleted as a result of her multiple disputes.

86.     I.C. System's actions render it liable for the above-stated violations of the FDCPA, and Ms. Gunn is therefore entitled to statutory damages up to $1,000.00 as well as other relief.

**COUNT IV**
**I.C. SYSTEM'S VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692e(2)(a)**

87.     Ms. Gunn adopts and incorporates paragraphs 1 – 73 as if fully stated herein.

88.     I.C. System violated **15 U.S.C. § 1692e(2)(a)** when I.C. System made false and misleading representations about the character, amount and legal status of the Debt when it falsely claimed: (a) the "Date of status" of the Debt (*e.g.*, the date which the account became a collection) was January 2022, when it was January 2018 or earlier; (b) that the account had been "First reported" as of February 2022, when it had been reported since June 2018 or earlier; (c) that the account was opened in January 2022, when it was opened in 2017; and, (d) that the Debt was not disputed, when it was disputed.

89.     I.C. System's actions caused Ms. Gunn to suffer damages to her credit report and scores, as well as emotional distress in having to deal with an account which she thought had been deleted as a result of her multiple disputes.

90.     I.C. System's actions render it liable for the above-stated violations of the FDCPA, and Ms. Gunn is therefore entitled to statutory damages up to $1,000.00 as well as other relief.

## COUNT V
## CHARTER'S VIOLATION OF THE FCCPA, FLA. STAT. § 559.72(6)

91.     Ms. Gunn adopts and incorporates paragraphs 1 – 73 as if fully stated herein.

92.     Charter violated **Section 559.72(6), Florida Statutes** when it communicated information about the Debt to I.C. System but failed to disclose the Debt was disputed, despite knowing of Ms. Gunn's dispute since at least 2018.

93.     By its conduct, Charter is liable for the above-stated violations of the FCCPA.

## COUNT VI
## DEFENDANTS' VIOLATIONS OF THE FCCPA, FLA. STAT. § 559.72(6)

94.     Ms. Gunn adopts and incorporates paragraphs 1 – 73 as if fully restated herein.

95.     I.C. System violated **Section 559.72(6)**, **Florida Statutes**, as agent for Charter, when it disclosed the existence of a debt known to be disputed by the consumer, but failed to disclose that the Debt was disputed, when reporting the debt to Experian in February 2022.

96.     I.C. System made its reports with reckless disregard whether the Debt was disputed and thus made its report with malice; as such, Ms. Gunn's state law claim is not pre-empted by the FCRA.

97.     "Malice can be established by evidence showing the defendant made a false statement 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Long v. Pendrick Capital Partners II, LLC*, Case No.: GJH-17-1955 (D. Md. Mar. 18, 2019), quoting *New York Times v. Sullivan*, 376 U.S. 254, 279-80 (1964); *see also Capital-Gazette Newspapers, Inc. v. Stack*, 293 Md. 528, 445 A.2d 1038, 1043-45 (Md.1982) (adopting the Supreme Court's definition of malice in the context of Maryland common law defamation cases).

98.     The actions of I.C. System and Charter were willful and intentional, or done with a reckless disregard for the consumer's rights under the FCCPA.

99.     By their conduct, of I.C. System and Charter are liable for the above-stated violations of the FCCPA.

## PRAYER FOR RELIEF – I.C. SYSTEM

**WHEREFORE,** Ms. Gunn respectfully requests this Honorable Court enter judgment in her favor, and against I.C. System, for:

a.     Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. §1692k(a)(2)(A);

b.     Statutory damages of **$1,000.00**, pursuant to Section 559.77(2), Florida Statutes;

c.      Actual damages, including damages for loss of credit opportunities, damage to credit scores, and for emotional distress;

d.      Equitable relief enjoining I.C. System from any further violation of the FCCPA concerning the collection of the Debt from Ms. Gunn;

e.      Reasonable costs and attorneys' fees pursuant to 15 U.S.C. §1692k(a)(3) and Section 559.77(2), Florida Statutes; and,

f.      Such other relief that this Court deems just and proper.

### PRAYER FOR RELIEF – CHARTER

**WHEREFORE,** Ms. Gunn respectfully requests this Honorable Court enter judgment in her favor, and against Charter, for:

a.      Statutory damages of **$1,000.00**, pursuant to Section 559.77(2), Florida Statutes;

b.      Actual damages, including damages for loss of credit opportunities, damage to credit scores, and for emotional distress;

c.      Equitable relief enjoining Charter from any further violation of the FCCPA concerning the collection of the Debt from Ms. Gunn;

d.      Reasonable costs and attorneys' fees pursuant to Section 559.77(2), Florida Statutes; and,

e.      Such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted on April 6, 2022, by:

SERAPH LEGAL, P. A.

*/s/ Brandon D. Morgan*
Brandon D. Morgan, Esq.
Florida Bar Number: 1015954
BMorgan@SeraphLegal.com

*/s/ Thomas M. Bonan*
Thomas M. Bonan, Esq.
Florida Bar Number: 118103
TBonan@SeraphLegal.com

1614 North 19th Street
Tampa, FL 33605
Tel: 813-567-1230
Fax: 855-500-0705
*Counsel for Plaintiff*

**EXHIBIT LIST**

A      Plaintiff's Equifax Consumer Disclosure, June 12, 2018, Waypoint Tradeline – Excerpt

B      Plaintiff's Experian Dispute Results, August 18, 2020, Amsher Tradeline – Excerpt

C      Cobb's Collection Letter to Plaintiff, October 7, 2020 – Excerpt

D      Plaintiff's Equifax Consumer Disclosure, February 24, 2021, CBE Tradeline – Excerpt

E      Plaintiff's Experian Consumer Disclosure, March 12, 2022, I.C. System Tradeline – Excerpt